Aaron C. Lachant (SBN 264468)
*alachant@leechtishman.com*
**LEECH TISHMAN NELSON HARDIMAN**
1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024
Telephone: (310) 203-2800
Facsimile:  (310) 203-2727

Attorneys for Plaintiff
Luxe Homecare, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUXE HOMECARE INC., a California Corporation,<br><br>   Plaintiff,<br><br>  vs.<br><br>ROBERT F. KENNEDY, JR., Secretary of the United States Department of Health and Human Services,<br><br>   Defendant. | Case No.  2:26-cv-6912<br><br>**COMPLAINT FOR ULTRA VIRES ACTION AND VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT** |

-1-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

## PRELIMINARY STATEMENT

1. Plaintiff Luxe Homecare, Inc. ("Luxe Homecare"), a longstanding Medicare-enrolled home health provider, seek relief from the Centers for Medicare & Medicaid Services' ("CMS") unlawful revocation of its Medicare enrollment and billing privileges imposed under 42 C.F.R. § 424.535(a)(19) based solely on the fact that Seyedeh Vahdani, Luxe Homecare's owner, also owns a Luxe Hospice, Inc. ("Luxe Hospice") which was recently revoked from participating in the Medicare program.

2. This action does not challenge CMS's discretionary assessment of risk. Rather, it challenges CMS's failure to follow the governing regulation before exercising that discretion. CMS revoked Plaintiff Luxe Homecare's enrollment without performing the individualized undue-risk analysis required by 42 C.F.R. § 424.519(f) and without providing the factual explanation it was required to provide in promulgating that rule so that a provider can meaningfully appeal the determination.

3. Because CMS failed to satisfy the procedural conditions precedent to exercising its revocation authority, the revocation is *ultra vires* and unlawful.

4. The consequences of CMS's action are immediate and devastating: Plaintiff Luxe Homecare is set to lose more than $250,000 per month in Medicare revenue, has begun shutting down operations, has issued layoff notices to its workforce, and has begun discharge planning for more than 100 patients. The harm is not limited to the business because Seyedeh Vahdani, Luxe Homecare's owner, obtained $1.5 million in Small Business Administration disaster loans following the January 2025 Pacific Palisades fire – secured by her personal residence. As a result of CMS's action, Ms. Vahdani faces default and the imminent loss of her home.

5. Absent immediate judicial intervention, Plaintiff Luxe Homecare will suffer irreparable harm, including the collapse of its business, permanent loss of its Medicare operations, loss of employment for its workforce, and the displacement of

-2-

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

patients. These harms are concrete, ongoing, and cannot be remedied through retrospective relief. Moreover, meaningful administrative review is effectively unavailable because CMS failed to disclose the underlying basis for its determination, depriving Plaintiff of the ability to understand, challenge, or cure the alleged deficiency.

## JURISDICTION AND VENUE

6.    This action arises under the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, including Title XVIII (Medicare), 42 U.S.C. §§ 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

7.    This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. Jurisdiction is proper notwithstanding the Medicare Act's administrative channeling requirements because Plaintiff asserts a collateral, *ultra vires* claim that CMS acted outside its delegated authority. In addition, Plaintiff's claims are wholly collateral to the administrative process and Plaintiff has raised a colorable claim of irreparable harm.

8.    Specifically, Plaintiff alleges that CMS failed to apply the mandatory regulatory framework set forth in 42 C.F.R. § 424.519(f) and failed to provide the required factual explanation of its undue-risk determination.

9.    Courts recognize that exhaustion may be excused where the agency acts beyond its authority and where requiring exhaustion would result in irreparable harm. That standard is satisfied here.

10.    Venue is proper under 28 U.S.C. § 1391(e).

## PARTIES

11.    Plaintiff Luxe Homecare, Inc. is a California corporation that operates a Medicare-certified home health agency in Los Angeles, California, and is owned by Seyedeh Vahdani.

12.    Defendant Robert Kennedy is the Secretary of Health and Human Services ("the Secretary") and is the head of the U.S. Department of Health

-3-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

& Human Services ("DHHS"), the federal agency which administers the Medicare Program, and is sued in his official capacity. Defendant is responsible for the administration of the Medicare program, including enrollment and revocation decisions carried out by CMS and its contractors.

## STANDING

13. Plaintiff has suffered and continues to suffer concrete and irreparable injury as a result of CMS's unlawful revocation.

14. That injury includes loss of revenue, inability to serve Medicare patients, operational disruption, reputational harm, and threatened closure of the business.

15. The requested relief would redress those injuries.

## LEGAL FRAMEWORK

16. The Medicare program is a federally funded health care program providing health insurance coverage to people who are aged 65 and over or who have certain physical disabilities. *See* 42 U.S.C. §§ 1395 *et seq.* Medicare Part A covers hospital inpatient services, home healthcare after a hospital or skilled nursing facility stay, and hospice care for terminally ill individuals with a prognosis of six months or less and Medicare Part B covers outpatient services, including home health care for patients who are homebound and require skilled care. 42 U.S.C. §§ 1395c, 1395k. The program is administered by the DHHS through its agency, the Centers for Medicare & Medicaid Services ("CMS"). CMS in turn contracts with private organizations to act as Medicare Administrative Contractors ("MACs") to review and process Medicare claims submitted by hospitals for treatment of Medicare patients. *See* 42 U.S.C. §§ 1395ff(a)(l), 1395kk-l(a)(3)-(4).

17. CMS may terminate a Medicare provider's enrollment based on a failure to comply with Medicare program requirements or for other reasons set forth in regulations. 42 U.S.C. § 1395cc(b). Further, under 42 C.F.R. § 424.535(f), when CMS revokes a provider's participation in the Medicare program, "CMS

-4-

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

automatically reviews all other related Medicare enrollment files that the revoked provider or supplier has an association with (for example, as an owner or managing employee) to determine if the revocation warrants an adverse action of [sic] the associated Medicare provider or supplier."

18. However, under 42 C.F.R. § 424.535(a)(19), CMS may only revoke a provider's enrollment based on its association and affiliation with an owner if it determines that the affiliation "poses an undue risk of fraud, waste, or abuse." That determination must be made in accordance with 42 C.F.R. § 424.519(f) which requires CMS conduct a case-specific factor-based analysis of the affiliation that considers:

(1) The duration of the affiliation.

(2) Whether the affiliation still exists and, if not, how long ago it ended.

(3) The degree and extent of the affiliation.

(4) If applicable, the reason for the termination of the affiliation.

(5) Regarding the affiliated provider's or supplier's disclosable event under paragraph (b) of this section:

(i) The type of disclosable event.

(ii) When the disclosable event occurred or was imposed.

(iii) Whether the affiliation existed when the disclosable event occurred or was imposed.

(iv) If the disclosable event is an uncollected debt:

(A) The amount of the debt.

(B) Whether the affiliated provider or supplier is repaying the debt.

(C) To whom the debt is owed.

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

(v) If a denial, revocation, termination, exclusion, or payment suspension is involved, the reason for the disclosable event.

(6) Any other evidence that CMS deems relevant to its determination.

19. Similarly, under 42 C.F.R. § 424.535(i), CMS may extend a provider's revocation to its other "Medicare enrollments, including those under different names, numerical identifiers or business identities and those under different types" after considering the following factors:

(i) The reason for the revocation and the facts of the case.

(ii) Whether any final adverse actions have been imposed against the provider or supplier regarding its other enrollments.

(iii) The number and type(s) of other enrollments.

(iv) Any other information that CMS deems relevant to its determination.

20. In promulgating 42 C.F.R. § 424.535, CMS expressly stated in the federal register that a Medicare provider's affiliation alone does not establish undue risk and that it would proceed with caution and prudence when determining whether an undue risk of fraud, waste, or abuse exists:

We stress that merely because a provider or supplier may have at least one affiliation with a disclosable event and must therefore report all such affiliations upon a CMS request does not mean that CMS has determined that the provider and/or its affiliations pose an undue risk of fraud, waste, or abuse as stated in section 1866(j)(5) of the Act. The disclosure requirement is entirely separate from any undue risk finding. Indeed, CMS must first carefully review and analyze all disclosed affiliations before determining whether the undue risk standard … has been met; CMS will, in every case, act with caution and prudence when determining whether an undue risk of fraud, waste, or abuse exists.

-6-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

84 FR 47794, 47804 (Sept. 10, 2019).

21.   In promulgating 42 C.F.R. § 424.519, CMS explained that the requirement that Medicare providers disclose affiliations was intended to assist CMS in identifying Medicare providers who "engage in inappropriate activities, and depart the Medicare program voluntarily or involuntarily, yet continue their behavior by – (1) reentering the program in some capacity (for instance, as an owner); and/or (2) shifting their activities to another enrolled Medicare provider or supplier with which they are affiliated." 84 FR at 47797. The regulation was not designed to impose revocation based solely on a Medicare provider's existing and disclosed ownership affiliation with a revoked Medicare provider without evidence that the revoked provider's inappropriate conduct establishes that the continued enrollment of  the Medicare provider in good standing presents an undue risk of fraud, waste, or abuse to the Medicare program.

22.   With respect to CMS revocations of Medicare providers based on their affiliations, the agency has affirmed that it will "include pertinent information regarding the reason(s) for the undue risk determination in the denial or revocation letter sent to the provider or supplier."  84 FR at 47813.  Likewise, CMS explicitly requires MACs to send written revocation notices to Medicare providers that include a "clear explanation of why Medicare billing privileges are being revoked, including the facts or evidence that the contractor used in making its determination" and an "explanation of why the provider does not meet the applicable enrollment criteria." Medicare Program Integrity Manual, Pub. 100-08, Ch. 10, § 10.4.7.1(B)(2); *id*. at § 10.7.9(A) (revocation notice must "include sufficient details to support the reason for the provider or supplier's revocation").

23.   These Medicare regulatory requirements define the limits of CMS's delegated authority under § 424.535(a)(19).

///

///

-7-

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

## FACTUAL ALLEGATIONS

24.     Plaintiff Luxe Homecare is a long-standing Medicare-certified home health agency that has been serving the Pacific Palisades community in Los Angeles, California for more than fifteen years. Luxe Homecare is owned by Seyedeh Vahdani who also owns Luxe Hospice, Inc. ("Luxe Hospice"), which, until recently, had also been a Medicare provider to the same community for more than six years.

25.     Founded in 2011 by Seyedeh Vahdani, Luxe Homecare has built a reputation as a trusted, community-based provider committed to delivering compassionate, personalized care that preserves the dignity and independence of elderly patients. Luxe Homecare maintains full licensure and accreditation, including certification from the Joint Commission, and has developed longstanding relationships with patients, physicians, and referral sources based on reliability and quality of care. Luxe Homecare was awarded "Best New Business" by the Pacific Palisades Chamber of Commerce in 2016, and Ms. Vahdani was subsequently honored as "Person of the Year" and later as "Best Businessperson" in recognition of her leadership and contributions to the local community. Luxe has also actively participated in community events and charitable initiatives, including annual fundraising efforts for Alzheimer's awareness and longstanding involvement in local civic activities.

26.     In January 2025, the Pacific Palisades fire[1] destroyed the offices of Luxe Homecare and Luxe Hospice, severely disrupting their ability to operate and forcing them to continue delivering care under materially constrained and emergency conditions while attempting to maintain continuity for their patients. In order to

---

[1] Luxe Homecare has long provided in-home care services to vulnerable seniors in the Pacific Palisades community, including during emergency conditions such as the recent wildfire. In at least one instance reported publicly, a caregiver offered to assist with evacuation efforts outside of scheduled working hours, reflecting the level of engagement and responsibility Luxe maintains toward its patients. See, Ray Sanchez et al., "A father at the bedside of his son, a surfer and a woman who stayed behind with her beloved pets are among wildfire victims," CNN (Jan. 11, 2025), available at https://www.cnn.com/2025/01/11/us/california-wildfires-victims.

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

continue operating, Ms. Vahdani, their owner, personally guaranteed approximately $1.5 million in Small Business Administration ("SBA") disaster loans obtained by the Luxe Homecare and Luxe Hospice to sustain operations, with her personal residence pledged as collateral for those obligations. These SBA loans were necessary to preserve business operations, maintain continuity of patient care, and allow the home healthcare and hospice providers to continue employing their workforce.

27.    On April 8, 2026, National Government Services ("NGS"), a Medicare MAC, revoked Luxe Hospice's Medicare enrollment (effective November 30, 2025) pursuant to 42 C.F.R. § 424.535(a)(8)(ii) which authorizes such revocation if the provider "has a pattern or practice of submitting claims that fail to meet Medicare requirements …."  NGS did not allege that Luxe Hospice had engaged in Medicare fraud by submitting false claims or engaging in other illegal activity. Instead, NGS's notice stated that Luxe Hospice's revocation was based on the following documentation deficiencies:

> A review of Luxe Hospice Inc.'s submitted claims was conducted. This review consisted of 10 claims with dates of service from September 1, 2025, through November 30, 2025. Of the 10 claims reviewed, 9 were denied. The reasons for denial were identified as: documentation submitted had an election statement which failed to convey to the individual or their representative that certain services are waived by the election of hospice and documentation submitted does not support a valid face-to-face encounter occurred.

*See* 4/8/26 NGS Notice of Luxe Hospice Revocation, attached as Exhibit A. Luxe Hospice has submitted a Medicare administrative appeal of this revocation which is currently pending.

28.    Shortly thereafter, on or about May 26, 2026, NGS also revoked Luxe Homecare's enrollment (effective June 25, 2026) under § 424.535(a)(19) relying

-9-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

solely on Ms. Vahdani's concurrent ownership of Luxe Hospice, a now revoked Medicare provider. In making that determination, the CMS contractor did not allege that Luxe Homecare had itself engaged in Medicare fraud, waste or abuse or had violated any Medicare program requirements. Instead, the CMS contractor concluded that Luxe Homecare's affiliation with Ms. Vahdani posed an undue risk of fraud waste and abuse to the Medicare program because she was also the owner of Luxe Hospice, a revoked Medicare provider, as follows:

> Within the last 5 years, Seyedeh Vahdani was listed as an individual with ownership interest of Luxe Hospice Inc., a previously enrolled Medicare Entity that had a disclosable event. Luxe Hospice Inc.'s Medicare billing privileges were revoked on April 8, 2026, under 42 CFR §424.535(a)(8)(ii) Abuse of Billing Privileges. A revocation is considered a disclosable event as defined in 42 CFR §424.502.

> After reviewing the undue risk factors outlined in 42 CFR §424.519(f), as applicable, the duration, degree and extent of Seyedeh Vahdani's affiliation as being an individual with ownership interest of Luxe Hospice Inc., and their [sic] current roles at Luxe Homecare, Inc., poses an undue risk of fraud, waste, or abuse to the Medicare Program in violation of 42 CFR §424.535(a)(19).

*See* 5/26/26 NGS Notice of Luxe Hospice Revocation, attached as Exhibit B.

29. This NGS notice establishes that the CMS contractor violated its obligation to conduct the factor-based analysis of undue risk required by 42 C.F.R. § 424.519(f). In particular, while the notice alleges in conclusory fashion that the duration, degree and extent of Ms. Vahdani's ownership of Luxe Hospice supported revocation of Luxe Homecare, the notice fails to cite any facts whatsoever supporting its application of these factors, including the length of Ms. Vahdani's ownership of Luxe Hospice (11 plus years) and her connection as a non-clinician owner to the alleged documentation deficiencies identified by the CMS contractor as a basis for the hospice's revocation based on an audit of 10 claims. In particular, CMS did not

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

find that Ms. Vahdani is a clinician, served as a medical director, performed billing functions, or exercised any control over clinical documentation. CMS likewise did not identify any role in which Ms. Vahdani participated in or directed the clinical certification or documentation functions cited in the hospice revocation. In other words, CMS failed to provide any factual explanation of how the deficient hospice documentation and certifications by licensed healthcare professionals underlying Luxe Hospice's revocation relate to Ms. Vahdani's ownership role at Luxe Homecare or would likely affect that provider's provision of entirely different home healthcare services.

30.    Instead, CMS offered only a conclusory assertion that the duration, degree, and extent of Luxe Homecare's affiliation with Ms. Vahdani as an owner posed an undue risk of fraud, waste, and abuse involving the Medicare program because she was also the owner of Luxe Hospice a revoked Medicare provider.

31.    CMS's May 26, 2026 revocation letter contains no meaningful application of the § 424.519(f) factors and provides no explanation of how Luxe Homecare's affiliation with Ms. Vahdani creates a present risk of fraud, waste, or abuse. This omission is contrary to CMS's obligation to perform a factor-based analysis under § 424.519(f) and to provide a revoked Medicare provider with a reasoned factual explanation of its undue-risk determination.

32.    In effect, CMS treated the existence of an ownership affiliation between Luxe Homecare and Luxe Hospice, a revoked Medicare provider, as dispositive evidence of a risk of fraud, waste or abuse, without considering the nature of Luxe Hospice's underlying conduct, the specific role of Ms. Vahdani as owner of a home healthcare provider and hospices, or whether Luxe Hospice's alleged documentation deficiencies regarding hospice services created a plausible risk that Luxe Homecare's documentation of home healthcare services was also deficient. This failure to perform the required analysis and provide the required explanation is contrary to

-11-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

CMS's own regulations and rulemaking statements and renders the revocation unlawful.

33. On or about June 24, 2026, Luxe Homecare sought reconsideration of its revocation from CMS.

**FIRST CAUSE OF ACTION**

**(ULTRA VIRES AGENCY ACTION / APA VIOLATION)**

34. Plaintiff realleges and incorporates paragraphs 1 through 33 as if set forth fully herein.

35. CMS's authority to revoke enrollment under 42 C.F.R. § 424.535(a)(19) is conditioned on compliance with the requirements set forth in 42 C.F.R. § 424.519(f), including an individualized, factor-based determination of whether an affiliation poses an undue risk of fraud, waste, or abuse and notice to the Medicare provider of the facts and evidence supporting its revocation reason.

36. CMS failed to perform the required factor-based undue-risk analysis.

37. CMS failed to explain how the affiliation poses a present risk, as required by its own rulemaking statements.

38. Instead, CMS treated ownership affiliation alone as inherently risky and dispositive.

39. By failing to follow the required regulatory framework, CMS did not validly exercise its delegated authority.

40. Accordingly, the revocation constitutes *ultra vires* agency action, is not in accordance with law, and must be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2).

**SECOND CAUSE OF ACTION**

**(ARBITRARY AND CAPRICIOUS AGENCY ACTION)**

41. Plaintiff realleges and incorporates paragraphs 1 through 40 as if set forth fully herein.

-12-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

42. In addition, and in the alternative, even if CMS's action were within its delegated authority, the revocation is arbitrary, capricious, an abuse of discretion, and not in accordance with law under the Administrative Procedure Act.

43. CMS failed to engage in reasoned decision-making and failed to apply the factor-based analysis required under 42 C.F.R. § 424.519(f).

44. CMS ignored relevant factors it was required to consider, including: (a) the owner's non-clinical role; (b) the nature of the underlying conduct; (c) the absence of any findings or deficiencies at Luxe Homecare; (d) the separate business entities and lines of business of Luxe Hospice and Luxe Homecare; and (e) the disaster circumstances relating to the Pacific Palisades fire.

45. CMS further failed to provide notice that included a reasoned factual explanation connecting the alleged conduct at Luxe Hospice to any present risk at Luxe Homecare.

46. CMS failed to articulate a rational connection between its conclusion that an undue risk exists and any identified facts.

47. CMS's decision reflects a failure to consider important aspects of the problem and an unexplained departure from its own regulatory framework.

48. Accordingly, the revocation is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and must be set aside under 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that CMS's revocation of Plaintiff's Medicare enrollment is unlawful and ultra vires;

2. Vacate the revocation and restore Plaintiff's Medicare enrollment and billing privileges;

**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**

3.   Alternatively, remand the matter to CMS with instructions to apply 42 C.F.R. § 424.519(f) and reinstate Plaintiff's enrollment pending that determination;

4.   Enjoin the CMS from enforcing the revocation and preclusion consequences;

5.   Award fees and costs as permitted by law; and

6.   Grant such other relief as the Court deems just.

Dated:   June 24, 2026          LEECH TISHMAN NELSON HARDIMAN INC.


By:   _/s/ *Aaron C. Lachant*_____
            Aaron C. Lachant

Attorneys for Plaintiff
Luxe Homecare, Inc.

-14-
**COMPLAINT FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT**