TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-5557
     E-mail: Alexander.Farrell@usdoj.gov

Attorneys for Defendant
Robert F. Kennedy Jr., in his official capacity
As Secretary of the U.S. Department of
Health and Human Services

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUXE HOMECARE INC., a California Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>ROBERT F. KENNEDY, JR., Secretary of the United States Department of Health and Human Services,<br><br>        Defendant. | No. 2:26-cv-06912-GW-AS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION [DKT. 10]**<br><br>*Declarations of Rebecca Gorton Grandfield filed concurrently herewith*<br><br>Hearing Date:   July 27, 2026<br>Hearing Time:   8:30 a.m.<br>Ctrm:          9D<br><br>Honorable George H. Wu<br>United States District Judge |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                        PAGE

**Contents**

TABLE OF AUTHORITIES ...............................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ...............................................................................................1

II.     STATUTORY AND REGULATORY FRAMEWORK .....................................3

III.    FACTUAL SUMMARY .....................................................................................4

IV.     ARGUMENT........................................................................................................5

    A.      This Court Must Deny Plaintiff's TRO Application Because the Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims ...............5

        1.      Plaintiff's Claims Arise Under the Medicare Act...............................7

        2.      Presentment and Exhaustion................................................................7

        3.      Plaintiff Cannot Establish That the Administrative Exhaustion Requirement Should Be Waived.........................................................8

        4.      The "No Review At All" Exception Does Not Apply.......................11

    B.      Plaintiff Cannot Meet the Requirements for Injunctive Relief and Is Not Entitled to a TRO .......................................................................12

        1.      Plaintiff Is Unlikely to Succeed on the Merits.................................13

        2.      CMS's Revocation Did Not Violate the APA ..................................14

        3.      CMS's Revocation Was Not *Ultra Vires*........................................16

        4.      Plaintiff Has Not Established Irreparable Harm...............................17

        5.      The Balance of Equities and Public Policy Weigh in Favor of the Government...................................................................................17

    C.      Bond Requirement under Rule 65(c) .........................................................20

V.      CONCLUSION...................................................................................................20

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                                                    PAGE

**Cases**

*Adams EMS, Inc. v. Azar*,
  2018 WL 6573097 (S.D. Tex. Nov. 29, 2018) ......................................................20

*All Home Med. Supply, Inc. v. Azar*,
  2019 WL 2422690 (S.D. Cal. June 10, 2019)......................................................8, 9

*Amylin Pharm., Inc. v. Eli Lilly and Co.*,
  456 F. App'x 676 (9th Cir. 2011) ............................................................................17

*Applied Materials, Inc. v. Demaray LLC*,
  2020 WL 7642869 (N.D. Cal. Dec. 23, 2020)..........................................................6

*Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*,
  239 F. Supp. 3d 266 (D. D.C. 2017)........................................................................19

*Baron & Baron Med. Corp. v. Hargan*,
  2018 WL 3532915 (S.D. Cal. July 23, 2018) .......................................................9, 11

*Cardinal Health, Inc. v. Holder*,
  846 F.Supp.2d 203 (D.D.C. 2012) ..........................................................................10

*Care Pro Home Health, Inc. v. Burwell*,
  2015 WL 12731744 (N.D. Tex. Apr. 3, 2015) ..........................................................8

*Cassim v. Bowen*,
  824 F.2d 791 (9th 1987)....................................................................................11, 18

*Castaneda v. U.S. Dept. of Agriculture*,
  807 F.2d 1478 (9th Cir. 1987) .................................................................................10

*Cathedral Rock of North College Hill, Inc. v. Shalala*,
  223 F.3d 354 (6th Cir. 2000) ...................................................................................17

*Colo. River Indian Tribes v. Town of Parker*,
  776 F.2d 846 (9th Cir. 1985) ...................................................................................17

*Comm. Of Cent. Am. Refugees v. Immigration & Naturalization Serv.*,
  795 F.2d 1434 (9th Cir. 1986) .................................................................................12

*Ctr. for Food Safety v. Vilsack*,
  636 F.3d 1166 (9th Cir. 2011) .................................................................................17

*Enchant Christmas Light Maze & Market Ltd. v. Glowco*,
  958 F.3d 532 (6th Cir. 2020) ...................................................................................13

*EpicGenetics LLC v. Becerra*,
  2022 WL 22947534 (C.D. Cal. June 28, 2022) .......................................................11

*Erickson v. U.S. ex rel. Dep't of Health & Hum. Servs.*,
  67 F.3d 858 (9th Cir. 1995) .....................................................................................18

Fairbanks North Star Borough v. U.S. Army Corps of Engineers,
  543 F.3d 586 (2008)..................................................................................................14

*Fam. Rehab., Inc. v. Azar*,

886 F.3d 496 (5th Cir. 2018) ...................................................................................9

*Five Points Healthcare of NC, LLC v. Becerra,*
    669 F.Supp.3d 524 (E.D.N.C. 2023) ...................................................................8

*Fla. Dep't of State v. Treasure Salvors, Inc.,*
    458 U.S. 670 (1982) ............................................................................................16

*Friends of the Wild Swan v. Weber,*
    767 F.3d 936 (9th Cir. 2014) ..............................................................................16

Gallo Cattle Co. v. U.S. Dep't of Agric.,
    159 F.3d 1194 (9th Cir. 1998) ............................................................................14

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ..............................................................................12

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.,*
    30 F.4th 905 (9th Cir. 2022) ................................................................................8

*Group Health, Inc. v. Schweiker,*
    549 F. Supp. 135 (S.D. Fla. 1982) ......................................................................19

*Heckler v. Ringer,*
    466 U.S. 602 (1984)........................................................................................6, 7, 9

*Hindley v. Dep't of Health & Hum. Servs.,*
    2017 WL 1398257 (N.D. Cal. Apr. 19, 2017)....................................................10

*Johnson v. Shalala,*
    2 F.3d 918 (9th Cir. 1993) ..................................................................................11

Kaiser Found. Hosps. v. Sebelius,
    649 F.3d 1153 (9th Cir. 2011) ............................................................................14

*Kildare v. Saenz,*
    325 F.3d 1078 (9th Cir. 2003) ..............................................................................8

*Kokkonen v. Guardian Life Ins. Co.,*
    511 U.S. 375 (1994)...............................................................................................5

Lair v. Bullock,
    697 F.3d 1200 (9th Cir. 2012) ............................................................................12

*Lee v. Kennedy,*
    2026 WL 1047047 (C.D. Cal. Mar. 24, 2026)......................................................7

*Livingston Care Center, Inc. v. United States,*
    934 F.2d 719 (6th Cir. 1991) ..............................................................................10

*Los Angeles Memorial Coliseum Commission v. National Football League,*
    634 F.2d 1197 (9th Cir. 1980) ..............................................................................9

*Martin v. Int'l Olympic Comm.,*
    740 F.2d 670 (9th Cir. 1984) ..............................................................................12

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997).............................................................................................12

*Mission Power Eng'g Co. v. Cont'l Cas. Co.,*
    883 F. Supp. 488 (C.D. Cal. 1995) .....................................................................12

iii

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................................12

*Northlake Community Hosp. v. United States*,
    654 F.2d 1234 (7th Cir. 1981) ...............................................................................17

*O'Bannon v. Town Court Nursing Center*,
    447 U.S. 773 (1980)................................................................................................10

*Pac. Mar. Ass'n v. NLRB*,
    827 F.3d 1203 (9th Cir. 2016) ...............................................................................16

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................................16

*Pennhurst State Sch. and Hosp. v. Halderman*,
    451 U.S. 1 (1981)....................................................................................................18

*Ramtin Massoudi MD Inc. v. Azar*,
    2018 WL 1940398 (C.D. Cal. Apr. 23, 2018) ........................................................11

*Reg'l Home Health Care, Inc. v. Azar*,
    488 F. Supp. 3d 827 (S.D. Iowa 2020) ...................................................................11

*Rivas Rosales v. Barr*,
    2020 WL 1505682 (N.D. Cal. Mar. 30, 2020) .........................................................6

*Sensory Neurostimulation, Inc. v. Azar*,
    977 F.3d 969 (9th Cir. 2020) ...............................................................6, 7, 10, 11

*Shaarawy v. Becerra*,
    2024 WL 5317256 (C.D. Cal. Nov. 1, 2024)............................................................8

*Shalala v. Illinois Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000)................................................................................................7, 11

*Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush & Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) .................................................................................12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................................17

*Taverniti v. Colvin*,
    581 Fed. Appx 645 (9th Cir. 2014)...........................................................................8

*Town Court Nursing Ctr. v. Beal*,
    586 F.2d 266 (3d Cir. 1978).....................................................................................17

*United States v. Mitchell*,
    445 U.S. 535 (1980)..................................................................................................6

*Vencor Nursing Ctrs., L.P. v. Shalala*,
    63 F. Supp. 2d 1 (D. D.C. 1999)..............................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................12

**Statutes**

5 U.S.C. § 704..............................................................................................................14

iv

5 U.S.C. § 706(2)(A)............................................................................................14

42 U.S.C. § 405(g) .......................................................................................4, 6, 7

42 U.S.C. § 1395 ...............................................................................................3

42 U.S.C. § 1395cc(j)........................................................................................3

42 U.S.C. § 1395x(o) .........................................................................................3

42 U.S.C. §§ 1395cc(h)(1)(A) ...........................................................................6

42 U.S.C. §§ 1395hh(a)(1)................................................................................3

## Rules

Fed. R. Civ. P. 65(c).....................................................................................19, 20

## Regulations

42 C.F.R. § 424.505 ..........................................................................................3

42 C.F.R. § 424.519(f) ...........................................................................4, 13, 15, 16

42 C.F.R. § 424.535(a)(19) ...........................................................................passim

42 C.F.R. § 424.535(c)....................................................................................1, 5

42 C.F.R. § 424.545(a)(2) ...............................................................................18

42 C.F.R. § 498.20 .......................................................................................13, 15

42 C.F.R. § 498.20(a)(1) ...............................................................................13, 15

42 C.F.R. § 498.22 ...........................................................................................4

42 C.F.R. § 498.24 ...........................................................................................4

42 C.F.R. § 498.40 ...........................................................................................4

42 C.F.R. § 498.5(b) .........................................................................................4

42 C.F.R. § 498.5(l)(1).......................................................................................4

42 C.F.R. § 498.5(l)(3).......................................................................................4

42 C.F.R. § 498.80 ...........................................................................................4

42 C.F.R. § 498.90(a)(1) ....................................................................................4

42 C.F.R. §§ 422.2 .........................................................................................1, 5

42 C.F.R. §§ 424.502 ......................................................................................3, 5

42 C.F.R. §§ 498.22(b) ......................................................................................4

42 C.F.R. §§ 498.3(a)(1) ....................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Robert F. Kennedy Jr., Secretary of Health and Human Services, opposes the *ex parte* Application for Temporary Restraining Order filed by Plaintiff Luxe Homecare Inc. ("Plaintiff"). Dkt. 10 ("TRO Application").

Plaintiff, a home health agency under the sole ownership of Seyedeh Vahdani, had its Medicare enrollment and billing privileges revoked pursuant to 42 C.F.R. § 424.535(a)(19) by the Centers for Medicare & Medicaid Services ("CMS") (through its Medicare administrative contractor National Government Services ("NGS")) because of Ms. Vahdani's  ownership affiliation with Luxe Hospice, a hospice provider also solely owned by Ms. Vahdani, that was previously revoked from the Medicare program for abusing its billing privileges, in violation of 42 C.F.R. § 424.535(a)(8)(ii). CMS determined that Ms. Vahdani's ownership affiliation with Luxe Hospice, a *separate* entity, posed an undue risk of fraud, waste, or abuse, and revoked Luxe Homecare's Medicare enrollment under 42 C.F.R. § 424.535(a)(19).

When a provider or supplier is revoked from the Medicare program, CMS has the authority to impose a re-enrollment bar, which bars the supplier from participating in the Medicare program for the duration of the re-enrollment bar, and to place the provider on the Preclusion List. 42 C.F.R. § 424.535(c); 42 C.F.R. §§ 422.2 and 422.222. Because of the revocation, Plaintiff is prevented from seeking or obtaining payment from Medicare or Medicare Advantage plans for its services.

Plaintiff came to this Court seeking extraordinary emergency relief, despite failing to exhaust its administrative remedies, as required by statute. In fact, Plaintiff did not even wait for the results of the first level of administrative review before seeking relief in this Court. Plaintiff's claims must be channeled through the administrative appeals process to a final decision before this Court has jurisdiction. As explained below, the TRO Application must be denied for several reasons.

First, the Court lacks subject-matter jurisdiction over this suit. The Social Security

1

Act ("SSA") divests federal courts of subject-matter jurisdiction over claims by any party against the United States Department of Health and Human Services ("HHS") arising under Medicare and instead requires all such claims to first be channeled through the Medicare administrative review process. Judicial review is contingent upon a final decision of the Secretary, which requires both presentment of a claim and exhaustion of administrative remedies. Plaintiff did not exhaust the administrative remedies and has not received a final decision from the Secretary. Plaintiff submitted a reconsideration request on June 24, 2026, and this complaint for emergency relief followed on July 6, 2026, clearly insufficient time to complete the administrative process. Declaration of Rebecca Gorton Grandfield ("Grandfield Decl.") ¶ 9; Ex. B.

Second, Plaintiff has not met its heavy burden of showing that it is entitled to injunctive relief when considering the required factors of likelihood of success on the merits, irreparable harm, balancing of interests, and public policy. Plaintiff's arguments are unlikely to succeed on the merits, as CMS followed its regulatory mandate in making its initial determination. Likewise, Courts have consistently held that Medicare and Medicaid providers have no due process right to continue to receive federal funding while they challenge CMS's decision to revoke their Medicare billing privileges. Any provider or supplier that elects to participate in Medicare enters the program knowing that their funding may be revoked under these procedures, accepts that, and may not later circumvent the statutorily required process.  Plaintiff cannot show that it will suffer irreparable harm without injunctive relief. Plaintiff's loss of federal funding is purely financial, and that does not constitute irreparable injury.

Finally, Plaintiff is not entitled to injunctive relief because the balancing of the equities and public policy do not weigh in Plaintiff's favor. A TRO, if granted, would wrongly compel Medicare to continue paying for Plaintiff's services despite its previous affiliation with Luxe Hospice, a hospice provider that CMS revoked from Medicare for abusing its billing privileges, in violation of 42 C.F.R. §424.535(a)(8)(ii). Moreover, public policy favors HHS and CMS's protection of the Medicare Trust Fund and

protection of Medicare beneficiaries by permitting CMS to revoke suppliers' billing privileges, place suppliers on the Preclusion List, and to impose re-enrollment bars.

Accordingly, Defendant requests that the Court deny Plaintiff's TRO Application.

## II.   STATUTORY AND REGULATORY FRAMEWORK

The Medicare program, established under Title XVIII of the SSA, 42 U.S.C. § 1395 et seq., pays for covered items and services provided to eligible aged and disabled persons. Congress granted the Secretary of Health and Human Services the authority to administer the Medicare program, including the authority to regulate the enrollment of providers and suppliers into the Medicare program. 42 U.S.C. § 1395cc(j). Congress also granted the Secretary broad authority to establish methods to combat fraud, waste and abuse. 42 U.S.C. §§ 1395hh(a)(1), 1395ddd. Under the regulations, providers and suppliers must enroll in the Medicare program to receive payment for the items and services provided to Medicare beneficiaries. 42 C.F.R. § 424.505. As a home health agency, Plaintiff is a provider. 42 U.S.C. § 1395x(o).

CMS may revoke a provider's Medicare enrollment pursuant to 42 C.F.R. § 424.535(a)(19) if "CMS determines that the provider or supplier has or has had an affiliation under § 424.519 that poses an undue risk of fraud, waste, or abuse to the Medicare program." The Medicare regulations define "affiliation" and outline the factors that CMS considers when determining whether or not a particular affiliation poses an undue risk. 42 C.F.R. §§ 424.502, 424.519(f). An affiliation includes a "5 percent or greater direct or indirect ownership interest that an individual or entity has in another organization." 42 C.F.R. § 424.502. Under the regulations, CMS may request that Medicare providers and suppliers disclose any and all affiliations with other currently or formerly enrolled Medicare providers or suppliers that have had a "disclosable event." The regulations define "disclosable event" to include having Medicare enrollment denied, revoked, or terminated. 42 C.F.R. § 424.502. Upon receiving information regarding an affiliation with a provider or supplier with a disclosable event, CMS will determine whether the disclosed affiliation poses an undue risk of fraud, waste, or abuse.

3

In making this determination, CMS considers a list of specific factors. 42 C.F.R. § 424.519(f). If CMS determines that undue risk is posed by the affiliation, it will deny or revoke the provider or supplier's Medicare enrollment. 42 C.F.R. § 424.535(a)(19).

Revocations, including a revocation based on 42 C.F.R. § 424.535(a)(19), are initial determinations subject to review under 42 C.F.R. Part 498. 42 C.F.R. § 424.545(a); 42 C.F.R. §§ 498.3(a)(1), (b)(17)(i). To request that CMS reconsider an initial determination, a provider or supplier files a written request within 60 days of receipt of the notice of initial determination, unless CMS extends the time for filing for good cause shown. 42 C.F.R. § 498.5(l)(1); 42 C.F.R. §§ 498.22(b), (d). If a request for reconsideration is properly filed pursuant to 42 C.F.R. § 498.22, CMS reviews the request and any additional relevant evidence and then makes a reconsidered determination that affirms or modifies the initial determination. 42 C.F.R. § 498.24.

A provider or supplier that is dissatisfied with a reconsideration decision may request a hearing before an administrative law judge ("ALJ"), provided the hearing request complies with the requirements in 42 C.F.R. § 498.40. 42 C.F.R. § 498.5(l)(2). If a provider or supplier is dissatisfied with an ALJ's decision, it may request review of the ALJ's decision by the Departmental Appeals Board ("DAB"). 42 C.F.R. § 498.5(l)(3); 42 C.F.R. § 498.80. The DAB's decision is the final decision of the Secretary, which is subject to judicial review. 42 C.F.R. § 498.5(l)(3); 42 C.F.R. § 498.90(a)(1); 498.5(f)(2).

Judicial review of the Secretary's final decision lies in the United States District Court, as provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395cc(h)(1)(A)). 42 C.F.R. § 498.5(b)–(c).

### III.   FACTUAL SUMMARY

Plaintiff is a home health agency that participated in Medicare and is solely owned by Seyedeh Vahdani. Grandfield Decl., ¶ 13 Ex. C. Ms. Vahdani also solely owns Luxe Hospice, Inc., a hospice that participated in Medicare. *Id.*, ¶ 16 Ex. F. On April 8, 2026, CMS revoked Luxe Hospice's Medicare billing privileges for engaging in a pattern or practice of submitting claims that failed to meet Medicare requirements, violating 42

C.F.R. § 424.535(a)(8)(ii).[1] *Id.*, ¶ 14; Ex. D. Because Luxe Hospice and Luxe Homecare have an affiliation, as defined by 42 C.F.R. § 424.502, due to Ms. Vahdani's one-hundred percent ownership of each provider and because the revocation of Luxe Hospice constituted a disclosable event pursuant to 42 C.F.R. § 424.502, CMS undertook the required analysis under 42 C.F.R. § 424.535(a)(19) and determined that Luxe Homecare's affiliation with Luxe Hospice posed an undue risk of fraud, waste, or abuse to the Medicare program in light of her ownership of Luxe Homecare. *See* Grandfield Decl., ¶ 11; Ex. A. On May 26, 2026, CMS, through NGS, revoked Plaintiff's Medicare billing privileges pursuant to 42 C.F.R. § 424.535(a)(19) and § 424.519(g). *See id*. CMS's notice informed Luxe Homecare that Ms. Vahdani's ownership interest in Luxe Hospice, within the previous five years posed "an undue risk of fraud, waste, or abuse to the Medicare Program." *Id*. CMS also informed Plaintiff that in addition to the revocation, pursuant to 42 C.F.R. § 424.535(c), it was imposing a re-enrollment bar for a period of ten years and placing Plaintiff on the Preclusion List. 42 C.F.R. §§ 422.2, 422.222, 423.100, and 423.120(c)(6). *Id*., ¶ 11; Ex. A. On June 24, 2026, Luxe Homecare requested reconsideration of CMS's action to revoke its enrollment in the Medicare program. *Id*., ¶ 12; Ex. B. CMS's reconsideration decision is still pending. *Id*.

## IV.   ARGUMENT

### A.   This Court Must Deny Plaintiff's TRO Application Because the Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

This Court lacks subject matter jurisdiction over Plaintiff's action because it failed to exhaust its administrative remedies and has not received a final decision from the Secretary subject to judicial review. Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). "As a threshold issue, when ruling on a motion for a preliminary injunction, [a c]ourt must consider

---

[1] Luxe Hospice timely appealed the revocation decision, and CMS's reconsideration decision is pending. Grandfield Decl., ¶ 15.

5

whether it has subject matter jurisdiction," *Applied Materials, Inc. v. Demaray LLC*, 2020 WL 7642869, at *3 (N.D. Cal. Dec. 23, 2020) (quotation marks and brackets omitted), and "may not grant a preliminary injunction if it lacks subject matter jurisdiction." *Rivas Rosales v. Barr*, 2020 WL 1505682, at *3 (N.D. Cal. Mar. 30, 2020).

The United States is immune from suit except to the extent it has consented to be sued, and any limitations on its consent impact subject matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Here, the Social Security Act explicitly limits the jurisdiction of federal courts in cases involving the Medicare program. *See* 42 U.S.C. §§ 1395cc(h)(1)(A), 1395ii; 42 U.S.C. § 405(g), (h). After reviewing 42 U.S.C. § 405(g) and (h), the Ninth Circuit articulated a three-step analysis to determine whether a court has subject matter jurisdiction over cases involving Medicare. *Sensory Neurostimulation, Inc. v. Azar*, 977 F.3d 969, 976 (9th Cir. 2020). First, the court decides whether a claim "arises under" the Medicare Act such that the § 405(h) channeling requirement applies. *Id*. A claim "arises under" the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Act, or if it is "inextricably intertwined with [a] claim[] for benefits." *Heckler v. Ringer*, 466 U.S. 602, 614-615 (1984). Assessing whether a case arises under the Medicare Act for purposes of Section 405(g) involves considering the claim's essence, and "not whether [the claim] lends itself to a 'substantive' rather than a 'procedural' label." *Id*. at 615.

If a claim does not arise under the Medicare Act, a plaintiff may proceed to federal court. However, if a claim does arise under the Medicare Act, the court moves to the second part of the analysis, which is determining if plaintiff has met the channeling requirement by presenting the claim and exhausting the administrative process. *Sensory Neurostimulation, Inc.*, 977 F.3d at 976. Presentment is a non-waivable jurisdictional requirement while exhaustion may be waived. *Id*. Meeting the channeling requirement allows the agency a "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13-14 (2000).

If a plaintiff has met the presentment and exhaustion requirements, it may proceed to court. If not, the court moves to the third part of the analysis, which is to determine if requiring channeling would mean there is "no review at all." *Sensory Neurostimulation, Inc.*, 977 F.3d at 976. If it does not, plaintiff's claim cannot proceed and must be dismissed for lack of subject matter jurisdiction.

### 1.    Plaintiff's Claims Arise Under the Medicare Act

Plaintiff's claims "arise under" the Medicare Act because the essence of its challenge is that CMS impermissibly revoked its Medicare billing privileges under 42 C.F.R. § 424.535(a)(19), thereby preventing it from accessing the Medicare Trust Fund. Consequently, it is required to channel the claims raised in its TRO through the multi-level administrative review process. Plaintiff initiated the administrative process on June 24, 2026, and immediately filed its complaint on the following day. *See* Grandfield Decl., ¶ 12, Ex. B; *see also* Dkt. 1.

### 2.    Presentment and Exhaustion

All claims arising under the Medicare Act must be presented to the Secretary so that the Secretary can issue a final decision in accordance with 42 U.S.C. § 405(g), which "is the sole avenue for judicial review of all claim[s] arising under the Medicare Act." *Ringer*, 466 U.S. at 615. As noted above, the presentment requirement cannot be waived while exhaustion may be. *See Sensory Neurostimulation, Inc.*, 977 F.3d at 976.

Here, Plaintiff has not exhausted its administrative remedies. Plaintiff timely appealed the revocation decision on June 24, 2026, and that appeal is pending. Grandfield Decl., ¶ 12, Ex. B. Plaintiff has not completed the first level of the administrative appeals process, much less received a "final decision" from the Secretary after a hearing. 42 U.S.C. § 405(g). Without an appealable final decision, this Court should not find that it has subject matter jurisdiction. *See, e.g., Lee v. Kennedy*, 2026 WL 1047047, at *2 (C.D. Cal. Mar. 24, 2026) (district court found it did not have jurisdiction because plaintiffs only completed the first level of the administrative review process); *All Home Med. Supply, Inc. v. Azar*, 2019 WL 2422690, at *3 (S.D. Cal. June 10, 2019)

(district court found it did not have jurisdiction because plaintiffs only completed two of four levels of the administrative review process); *Taverniti v. Colvin*, 581 Fed. Appx 645, 646 (9th Cir. 2014) (unpublished) (affirming the district court did not have jurisdiction because plaintiff did not obtain a final agency decision); *Shaarawy v. Becerra*, 2024 WL 5317256, at *4 (C.D. Cal. Nov. 1, 2024) (finding no subject matter jurisdiction where plaintiff did not receive an ALJ decision); *Care Pro Home Health, Inc. v. Burwell*, 2015 WL 12731744, at *4 (N.D. Tex. Apr. 3, 2015) (finding no subject matter jurisdiction where plaintiff did not receive an ALJ decision); *Five Points Healthcare of NC, LLC v. Becerra*, 669 F.Supp.3d 524, 529 (E.D.N.C. 2023) ("This court joins the chorus of courts holding that procedural dismissals without an ALJ hearing stemming from unjustified delays on the part of plaintiffs do not constitute a 'final decision . . .made after a hearing' within the meaning of section 405(g). Thus, this court lacks subject-matter jurisdiction."). Here, Plaintiff has not obtained a "final decision" from the Secretary, and thus SSA Sections 405(g) and (h) bar the Court's subject matter jurisdiction over the Complaint.

### 3. Plaintiff Cannot Establish That the Administrative Exhaustion Requirement Should Be Waived

Plaintiff is also not entitled to judicial waiver of the exhaustion requirement. There are "three prerequisites for waiver of the exhaustion requirement: 'The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purpose of exhaustion (futility).'" *Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003). "A claim is deemed 'collateral' . . . when it is not bound up with the merits so closely that the court's decision would constitute interference with the agency process." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 919 (9th Cir. 2022).

Here, Plaintiff's claims are not entirely collateral to Plaintiff's substantive claim of entitlement because they are "bound up" with the merits of the underlying Medicare

8

revocation and placement on the Preclusion List. As discussed further below, Plaintiff attacks the depth of analysis CMS provided in its May 26, 2026, revocation notice to advance due process claims. Further, Plaintiff raises challenges to the underlying revocation of Luxe Hospice, while also conceding that the administrative process is running its course in that matter. Since granting Plaintiff's prayers for relief would require the Court to "examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute," Plaintiff's claim are not collateral. *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 503 (5th Cir. 2018) (citing *Ringer*, 466 U.S. at 614).

Regarding irreparability, Plaintiff cannot establish that enforcing the administrative exhaustion requirement would cause irreparable harm. Plaintiff argues that the loss of Medicare funding will cause Ms. Vahdani and Plaintiff's employees irreparable financial harm. While it is true that Plaintiff cannot receive Medicare payment for its services after its Medicare enrollment is revoked, the loss of revenue is purely financial, and courts in this Circuit have determined that such allegations fail to establish irreparable harm. *See All Home Med. Supply, Inc.*, 2019 WL 2422690, * at 3 ("There is no irreparable harm here" despite the plaintiff's claim "that it may be forced out of business if it endures years of recoupment" because channeling "comes at a price, namely, occasional individual, delay-related hardship") (citations omitted); *Baron & Baron Med. Corp. v. Hargan*, 2018 WL 3532915, at *3 (S.D. Cal. July 23, 2018) (finding no irreparable harm where plaintiff claimed it faced "the economic destruction" since "[m]ere financial injury will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation"); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("monetary injury is not normally considered irreparable").

Indeed, the Sixth Circuit has cautioned that a provider should not rely solely on Medicare as the source of its income, because it is subject to audit and possible recoupment. *Livingston Care Center, Inc. v. United States*, 934 F.2d 719, 721 (6th Cir.

1991) (participation in the Medicare program is a voluntary undertaking; participation in Medicare involves a degree of risk which increases directly with the percentage of patient services paid for with government funds). An entity that does rely heavily on Medicare cannot now use that as justification to circumvent the administrative process.

Plaintiff also suggests that its patients will suffer irreparable injury if its revocation is not stayed during its administrative appeal, alleging reductions in staff have already placed patient safety at risk, as well as increased risk from transporting patients to other facilities. However, alleged harm to third parties does not show that Plaintiff itself would suffer irreparable injury absent waiver of exhaustion. *See O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787–90 (1980) (nursing home patients do not have standing to challenge the Secretary's decertification of their facility); *Castaneda v. U.S. Dept. of Agriculture*, 807 F.2d 1478, 1479-1480 (9th Cir. 1987) (this Circuit's application of *O'Bannon*); *Cardinal Health, Inc. v. Holder*, 846 F.Supp.2d 203, 213 (D.D.C. 2012) (an argument about the irreparable harm to consumers "fails because it shows irreparable harm not to [plaintiff], but to third parties").

Plaintiff also claims that it will suffer irreparable harm arising from reputational harm with referral sources, physicians, and other partners, but these claims are speculative and do not satisfy the irreparability requirement for judicial waiver. Bare allegations that a revocation caused reputational harm, without evidence, are insufficient to show a protected liberty interest. *Hindley v. Dep't of Health & Hum. Servs.*, 2017 WL 1398257, at *10 (N.D. Cal. Apr. 19, 2017) (finding no liberty interest when billing privileges revoked).

With respect to futility, it is only established where administrative exhaustion "would not serve the policies underlying exhaustion" such as compiling "a detailed factual record and apply[ing] agency expertise in administering its own regulations." *Sensory Neurostimulation, Inc.*, 977 F.3d at 981 (9th Cir. 2020). Plaintiff has not shown why the exhaustion of administrative remedies with respect to its Medicare claims is futile. Plaintiff would not have filed an administrative appeal of its revocation if it

10

genuinely thought that process was futile. In addition, the Ninth Circuit has held "[f]utility is established if exhausting administrative remedies 'would not serve the policies underlying exhaustion.'" *Id*. at 981(quoting *Cassim v. Bowen*, 824 F.2d 791, 795 (9th 1987)). The policies underlying exhaustion are to allow the agency "to compile a detailed factual record and apply agency expertise in administering its own regulations"; and "conserve[ ] judicial resources" by allowing the agency to "correct its own errors through administrative review." *Id*. (quoting *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993)).

###### 4.    The "No Review At All" Exception Does Not Apply

In addition, the Court's narrow "no review at all exception" as explained in *Illinois Council* is inapplicable to Plaintiff's claims. That "extremely narrow" exception only applies when, unlike here, "the agency's procedures" result in a "complete preclusion of judicial review." *Reg'l Home Health Care, Inc. v. Azar*, 488 F. Supp. 3d 827, 837 (S.D. Iowa 2020) (quoting *Illinois Council*, 529 U.S. at 22-23).

District Courts have regularly rejected such "no review at all" arguments when Medicare plaintiffs failed to exhaust their administrative remedies and thus failed to obtain an appealable final decision. *See EpicGenetics LLC v. Becerra*, 2022 WL 22947534, at *9 (C.D. Cal. June 28, 2022); *Baron & Baron*, 2018 WL 3532915, at *3-*4; *Ramtin Massoudi MD Inc. v. Azar*, 2018 WL 1940398, at *10 (C.D. Cal. Apr. 23, 2018). Specifically, the Supreme Court's holding in *Illinois Council* foreclosed the same argument in this case: "we do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case." *Illinois Council*, 529 U.S. at 22-23. Instead, the Supreme Court held "the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review." *Id*. (emphasis in original).

As such, the "no review at all" exception is inapplicable to this case, and Plaintiff

11

identifies no regulatory or statutory bar that precludes it from exhausting the administrative appeals process.

### B.    Plaintiff Cannot Meet the Requirements for Injunctive Relief and Is Not Entitled to a TRO

The legal standard for issuing a TRO is identical to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008). To meet this heavy burden, the moving party must make "a clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (internal citations omitted). Where the government is a party, the balance of equities and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); Lair v. Bullock, 697 F.3d 1200, 1203 (9th Cir. 2012).

Where a party, such as Plaintiff is doing here, "seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984); *Comm. Of Cent. Am. Refugees v. Immigration & Naturalization Serv.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (same). For mandatory preliminary relief to be granted, Plaintiff "must establish that the law and facts clearly favor [its] position…" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (emphasis in original).

Further in this Court, when a party seeks extraordinary ex parte relief, it must demonstrate it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Here, Plaintiff has failed to show a need for mandatory injunctive relief on an *ex parte* schedule. Plaintiff is not asking this Court to preserve the status quo, but rather, to rescind a revocation of Plaintiff's Medicare billing privileges that has been in effect since May 26, 2026. Grandfield Decl., ¶ 11, Ex. A. Plaintiff initiated the administrative process with CMS on June 24, 2026, and then immediately filed this lawsuit on following day. *See* Grandfield Decl., ¶ 12, Ex. B; *see also* Dkt. 1. Plaintiff clearly created the crisis that it now states require *ex parte* relief. And as explained below, this Court should deny Plaintiff's request for mandatory injunctive relief.

### 1.    Plaintiff Is Unlikely to Succeed on the Merits

Plaintiff cannot succeed on the merits because, as previously discussed, this Court lacks subject matter jurisdiction over the complaint. Even if this Court finds that jurisdiction exists over the complaint, Plaintiff cannot show a likelihood of success on the merits. "[A] finding that there is simply no likelihood of success on the merits is usually fatal' to a plaintiff's quest for a preliminary injunction." *Enchant Christmas Light Maze & Market Ltd. v. Glowco*, 958 F.3d 532, 539 (6th Cir. 2020).

Plaintiff claims that the Secretary acted both ultra vires and in violation of the Administrative Procedure Act by failing to issue a detailed revocation determination notice to Plaintiff. Specifically, Plaintiff contends that the revocation notice does not contain sufficient analysis of the mandatory factors in 42 C.F.R. § 424.519(f). However, in making this argument, Plaintiff appears to read a requirement with regard to the form and content of CMS's initial revocation notice into the revocation authority and notice requirements of 42 C.F.R. §§ 424.519(f), 424.535(a)(19), and 498.20. In fact, 42 C.F.R. § 498.20, which sets forth the requirements for notices of initial determinations, contains no such requirement as Plaintiff alleges. CMS is required to set forth "the basis or reasons for the determination, the effect of the determination, and the party's right to reconsideration, if applicable, or to a hearing." 42 C.F.R. § 498.20(a)(1). Although Plaintiff argues that failure to provide a detailed and individualized account of the analysis it undertook pursuant to 42 C.F.R. § 424.535(a)(19) in the initial revocation

13

notice violates the APA's mandate that agencies act in accordance with their governing regulations, such an argument must fail in the absence of a requirement for the agency to act otherwise. Likewise, Plaintiff argues that the alleged lack of depth in analysis is evidence that CMS did not perform the analysis at all, contrary to the regulatory mandate, and thus acted *ultra vires*.

2.    CMS's Revocation Did Not Violate the APA

First, the APA requires a final action to be subject to judicial review. 5 U.S.C. § 704. In Fairbanks North Star Borough v. U.S. Army Corps of Engineers, the Ninth Circuit held that finality of an agency decision is a jurisdictional requirement to obtaining judicial review under the APA (Fairbanks North Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 591 (2008); See, Gallo Cattle Co. v. U.S. Dep't of Agric., 159 F.3d 1194, 1198 (9th Cir. 1998)(agency action is "only reviewable if it constitutes "final agency action" for which there is no other adequate remedy in a court"). The court further clarified that not every agency decision that has immediate financial impact, or even profound economic consequences in the real world, constitutes reviewable final agency action under the APA. Fairbanks at 596. As discussed above, the May 26, 2026, revocation is not a reviewable final decision of the Secretary. Indeed, Plaintiff appealed the initial determination and the administrative process is running its course. Grandfield Decl., ¶ 12. Ex. B.

Furthermore, CMS's notice of revocation does not violate the APA because CMS acted within its regulatory authority. Under the APA, an agency's action will be set aside if it is arbitrary and capricious, an abuse of discretion or is unsupported by substantial evidence. 5 U.S.C. § 706(2)(A),(E). This circuit has held that an agency violates the APA "if it has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Kaiser Found. Hosps. v. Sebelius, 649 F.3d 1153, 1159 (9th Cir. 2011) (quotation omitted).

14

Neither 424.519(f) nor 424.535(a)(19), mandate that CMS provide a fully fleshed out and individualized analysis in the initial revocation notice, as Plaintiff asserts. Rather, these regulations state the basis and factors CMS must consider in making a revocation determination for undue risk due to affiliation. As stated in its revocation notice, CMS made its determination pursuant to the applicable regulations and considered the required risk factors. Grandfield Decl., ¶ 11. Ex. A. Although Plaintiff alleges that CMS is required to describe that process in detail in the notice, no such requirement exists. As discussed, supra, 42 C.F.R. § 498.20 only requires CMS to set forth "the basis or reasons for the determination, the effect of the determination, and the party's right to reconsideration, if applicable, or to a hearing." 42 C.F.R. § 498.20(a)(1). Indeed, the CMS policy manual that provides specific direction on the form and content of such notices to MACs, the Medicare Program Integrity Manual ("MPIM"), directs only that revocation letters "shall contain: (a) a legal basis… for the revocation…, and (b) [a] clear explanation of why Medicare billing privileges are being revoked, including the facts or evidence that the contractor used in making its determination". MPIM chapter 10, §10.4.7.1(B)(2)(i).[2]

Here, the notice included the legal basis for the revocation, citing 42 C.F.R. § 424.535(a)(19) as authority for the revocation. Grandfield Decl., ¶ 11, Ex. A. The notice also explained that after reviewing the factors listed in 42 C.F.R. § 424.519(f), specifically the duration, degree, and extent of Ms. Vahdani's affiliation as an individual with an ownership interest in Luxe Hospice, a facility that was revoked for abusive billing, CMS determined that the affiliation posed an undue risk of fraud, waste, or abuse. *Id*. Therefore, Plaintiff was notified of both the legal authority, and factual basis

---

[2] Plaintiff references CMS's comments to the proposed rule in the Federal Register as support for its demand for a detailed notice. 84 Fed. Reg. 47,794, 47,941–43. CMS's commitment noted in the comment to the proposed rule to "carefully review and analyze" affiliations and provide "pertinent information" does not reveal a requirement to provide the detailed analysis Plaintiff alleges is required in an initial notice. Both the resulting final regulation and policy manual are consistent with CMS's stated intent, and CMS complied with these requirements as discussed above.

for the revocation, consistent with MPIM chapter 10, §10.4.7.1(B)(2)(i) . Additionally, the lack of additional detail in the notice is not evidence that CMS did not perform the required analysis. CMS complied with the applicable requirements and stated so in the revocation notice. As such, CMS followed applicable regulations and policies in issuing the May 26, 2026, revocation notice, consistent with the APA.

### 3.    CMS's Revocation Was Not *Ultra Vires*

Plaintiff alleges CMS's revocation of its billing privileges was *ultra vires* because "CMS did not perform [the undue risk] analysis here." However, Plaintiff has not provided any evidence to support this argument. Rather, Plaintiff is dissatisfied with the depth of analysis in the notice and puts this forth as evidence that CMS did not fulfill its regulatory duty to analyze the undue risk factors in reaching its determination. As discussed, supra, CMS stated in its notice that it performed the analysis required and there is no evidence to the contrary.

The Supreme Court has explained "[an official] may be said to act ultra vires only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697 (1982)). The Ninth Circuit has explained that an action is *ultra vires* if it contravenes "clear and mandatory" statutory language. *Pac. Mar. Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016).

Here, 42 C.F.R. § 424.535(a)(19) provides clear authority for CMS to make a revocation determination if an affiliation poses an undue risk of fraud, waste, and abuse, using factors listed in 42 C.F.R. § 424.519(f). As noted above, these regulations do not mandate the level of specificity in the notice. The notice included the legal basis for the revocation, 42 C.F.R. § 424.535(a)(19), and provided the § 424.519(f) factors, including the duration, degree, and extent of affiliation, used in reaching the determination, clearly demonstrating that CMS performed the required analysis in reaching the determination. Grandfield Decl., ¶ 11, Ex. A. Therefore, CMS's revocation is consistent with its regulatory authority and not *ultra vires*.

16

4.    Plaintiff Has Not Established Irreparable Harm

A "[p]laintiff must demonstrate imminent threatened injury as a prerequisite to preliminary injunctive relief." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 946 (9th Cir. 2014); *accord, e.g., Amylin Pharm., Inc. v. Eli Lilly and Co.*, 456 F. App'x 676, 679 (9th Cir. 2011) ("To support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough."). "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) (emphasis in original). Further, the imminent threatened injury "must be fairly traceable to the challenged action of the defendant; and it must be that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough" to constitute irreparable harm or to warrant the extraordinary relief of a preliminary injunction. *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985) (ellipsis omitted). As discussed above, Plaintiff has not established that it will suffer any imminent irreparable injury in the absence of a TRO.

5.    The Balance of Equities and Public Policy Weigh in Favor of the Government

Plaintiff has not established that the equities or public policy (which merge when the government is a party) weigh in its favor. With respect to Plaintiff's individual interest, courts have long held that "the private interest at stake is not particularly strong because the Medicare provider is not the intended beneficiary of the Medicare program." *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 365 (6th Cir. 2000); *see also Northlake Community Hosp. v. United States*, 654 F.2d 1234, 1242 (7th Cir. 1981) (holding Medicare provider not entitled to hearing before termination of provider agreement); *Town Court Nursing Ctr. v. Beal*, 586 F.2d 266, 277 (3d Cir. 1978). Even though termination of a provider agreement, or as in this case, revocation of Medicare

17

billing privileges, may have "severe economic impact on the provider, 'a provider's financial need to be subsidized for the care of its Medicare patients is only incidental to the purpose and design of the [Medicare] program.'" *Cathedral Rock*, 223 F.3d at 365. The means by which HHS and CMS can ensure the integrity of the Medicare and Medicaid program and safety of elderly patients is through control over the federal funding they pay to providers and suppliers. *See Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 28 (1981) ("the typical remedy for [] noncompliance with federally imposed conditions is . . . action by the Federal Government to terminate funds"). In addition, if a revocation decision is later overturned on appeal, the supplier receives full retroactive payments, thereby minimizing the private interest at stake. 42 C.F.R. § 424.545(a)(2).

On the other hand, the government has a strong interest in expeditious provider-termination procedures both to ensure the safety and care of Medicare beneficiaries and to minimize the expenses of administering the Medicare program. As the Ninth Circuit explained in *Erickson*, "the government has a 'compelling' interest in preventing, among other things, the waste of public resources caused by improper acts by physicians under Medicare." *Erickson v. U.S. ex rel. Dep't of Health & Hum. Servs.*, 67 F.3d 858, 863 (9th Cir. 1995); *see also Cassim*, 824 F.2d at 797 ("Requiring full-blown predeprivation hearings would frustrate Congress' intent and impede the Secretary's ability to act quickly. It would also impose significant administrative costs.").

CMS revoked Plaintiff's Medicare billing privileges because it determined Ms. Vahdani's ownership affiliation with a provider that had been revoked for abuse of billing posed an undue risk of fraud, waste, or abuse to the Medicare program. Grandfield Decl., ¶ 11, Ex. A. Public policy favors that the undue risk of Plaintiff's affiliation with Luxe Hospice does not continue during Plaintiff's challenge to CMS's revocation action. Public health and safety are best served by preserving HHS and CMS's authority to enforce their enrollments requirements aimed to protect beneficiaries and protect federal funds from abuse.

18

Plaintiff's request for an injunction compelling CMS to continue federal funding, potentially indefinitely, while it undergoes the administrative appeals process would deprive CMS of the tools it needs to protect the Medicare trust fund and Medicare beneficiaries and would instead effectively give Plaintiff a blank check to simply continue business as usual. This does not serve the equities or public policy. To the contrary, it runs directly counter to the equities and public policy and places Medicare funding at continued risk. *See Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 13 (D. D.C. 1999) (denying motion for TRO to prevent HHS from terminating noncompliant SNF and holding, among other things, that possible "transfer trauma" to residents who would have to relocate was outweighed by "the harm to residents that would result if they were allowed to remain in a facility which has been found not to comply with HHS's health and safety standards," and thus balance of equities favored the Government, not plaintiff).

Moreover, allowing providers and suppliers to evade the administrative process would overwhelm district courts with Medicare cases to the detriment of the public interest, and the equities favor treating Plaintiff no differently and no more favorably than any other provider or supplier facing the same circumstances, since it is inequitable to "pluck [one Medicare supplier] out of the crowd for special treatment." *See Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 291 (D. D.C. 2017). Accordingly, the equities and public interest are best served by giving CMS the necessary discretion to effectively administer Medicare, not by creating a special privilege for one aggrieved supplier. *See Group Health, Inc. v. Schweiker*, 549 F. Supp. 135, 145 (S.D. Fla. 1982) ("The public interest lies in the effective administration of the Medicare Program nationwide."). Denying Plaintiff's TRO Application will allow Defendant to continue to protect public funding and Medicare beneficiaries through the consequences of its provider- enrollment enforcement actions. It will also protect the Medicare Trust Fund against wasteful and abusive claims. As such, the balance of equities and public policy weigh in favor of the Government.

19

### C.   Bond Requirement under Rule 65(c)

Finally, if the Court determines it has subject matter jurisdiction, and if it decides to grant relief, it should order a bond pursuant to Fed. R. Civ. P. 65(c), which states "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Here, Plaintiff does not have an "ongoing relationship" with CMS as it no longer has Medicare billing privileges. Grandfield Decl., ¶ 11, Ex. A. Courts have found in a similar circumstance that the posting of a security bond of an amount sought to be paid by the government for Medicare recoupment was appropriate for a TRO. *See Adams EMS, Inc. v. Azar*, 2018 WL 6573097, at *1 (S.D. Tex. Nov. 29, 2018) (referencing the history of ordering a bond under Fed. R. Civ. P. 65). Thus, the amount of any bond should be akin to an appearance bond.

## V.   CONCLUSION

For all these reasons, Defendant respectfully requests that the Court deny Plaintiff's TRO Application in its entirety.

20

Dated: July 14, 2026          Respectfully submitted,

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation
Section


            /s/ Alexander L. Farrell
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendant Robert F. Kennedy Jr., in his
official capacity as Secretary of the U.S. Department of
Health and Human Services

## Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this Opposition Brief contains 20 pages and 6,969 words which complies with the word limit set by L.R. 11-6.1.

Dated: July 14, 2026                    /s/ Alexander L. Farrell

                                        ALEXANDER L. FARRELL
                                        Assistant United States Attorney